## CHESTER COMMUNITY CHARTER SCHOOL, Appellant

v.

## Daniel HARDY, on behalf of PHIL- ADELPHIA NEWSPAPER, LLC d/b/a The Philadelphia Inquirer.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 13, 2011.

Decided Feb. 29, 2012.

Joseph T. Doyle, Media, for appellant.

Amy B. Ginensky, Philadelphia, for appellee Daniel Hardy.

BEFORE: PELLEGRINI, Judge[1], and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Chester Community Charter School (Charter School) appeals an order of the Delaware County Court of Common Pleas (trial court) directing Charter School to produce a number of salary and contract documents requested by a newspaper reporter, Daniel Hardy, on behalf of *The Philadelphia Inquirer.* In doing so, the trial court affirmed a decision of the Pennsylvania Office of Open Records (OOR)

that the records were subject to disclosure even though they were in the possession of a private party that had contracted with Charter School. Discerning no error, we affirm.

Charter School operates two elementary schools and one middle school in Chester, Pennsylvania. It has contracted with Chester Community Charter School Management, Inc. (Management) to operate these schools on a day-to-day basis. The OOR described the relationship between Charter School and Management as follows:

> [Management] provides management services to [Charter School] pursuant to a "Management Agreement", that provides that [Management] has the sole right to "supervise, manage, operate, control and direct the performance of educational services under this Agreement." [Management], among other duties, also maintains student records, develops education plans, enforces rules and regulations, and provides a complete educational program for [Charter School]. Further, all personnel working at [Charter School] are employees of [Management]. [Management] provides teaching services, records keeping, and operates and controls the educational program at [Charter School].

OOR Final Determination at 8. OOR's findings that Management directed and controlled the delivery of educational services at Charter School were adopted by the trial court.

On January 30, 2009, Hardy submitted a written request on behalf of *The Philadelphia Inquirer* (Requester), for certain records from Charter School.[2] This written

---

1. This case was assigned to the opinion writer prior to January 7, 2012, when Judge Pellegrini became President Judge.

2. The written request sought:

1. For the fiscal year 1998–1999 (July 1, 1998 to June 30, 1999) and for all subsequent fiscal years to the present, records showing the names, titles, salaries and all other payments or expenses and benefits

request specifically invoked the Right–to–Know Law.[3] On March 9, 2009, Charter School responded by letter that the request was nothing more than "a blatant and improper attempt to circumvent the discovery process" in a defamation suit Charter School had filed in court against Hardy, *The Philadelphia Inquirer,* and Philadelphia Newspapers, Inc. (Defamation Defendants). Reproduced Record at 54 (R.R.——). Charter School added that, in any case, "many of the materials are not subject to disclosure under the Right–to–Know Law." R.R. 55. Finally, Charter School's response included 28 pages of documents. Requester appealed to the OOR.

The OOR accepted Requester's appeal on March 20, 2009. Its appeals officer, Nathan Byerly, asked Requester to extend the deadline for the OOR's issuance of a final determination to May 4, 2009, and Requester agreed. On April 16, 2009,

Byerly notified the parties of the extension. On May 6, 2009, Byerly notified the parties that Requester had agreed in a telephone conversation to a second extension, *i.e.,* to May 8, 2009, on which date OOR then issued its final determination. OOR directed Charter School to provide the requested documents.

Charter School appealed. On April 21, 2010, the trial court affirmed the OOR's final determination. Charter School filed a motion for reconsideration, and the trial court granted the motion, thereby vacating the April 21, 2010, decision. On June 21, 2010, after oral argument, the trial court vacated its order granting reconsideration and reinstated its April 21, 2010, decision. Charter School now appeals the June 21, 2010, order.

 On appeal,[4] Charter School raises four issues. They are: (1) Requester's

---

paid to all employees of [Management]. For the rest of the 2008–09 fiscal year, please provide records showing projected salaries or other payments or expenses and benefits for all employees.

2. For the fiscal year 1998–1999 (July 1, 1998 to June 30, 1999) and for all fiscal years to the present, records showing the names, titles, salaries and all other payments or expenses and benefits paid to all employees or contractors of Charter Choice Inc [predecessor of Management].

3. For the 1998–1999 fiscal year to the present, records showing the salaries and all other payments or expenses and benefits paid to Vahan H. Gureghian, Marie P. Winnett, Steven Lee, Danielle Gureghian, Louise Vitiello, Robert C. Olivo, Dr. David E. Clark Jr. and Peter Idstein.

4. For June 30, 2006 to the present,· records showing the "excess of revenues, over expenditures" compensation to [Management] made according to the terms of the June 2006 management agreement, as outlined on Page 13, Section 7.01.

5. For 2005 to the present, all State Ethics Commission Statements of Financial Interests for all [Charter School] Board of Trustee members.

6. For fiscal years 1999 to the present, records showing all payments for professional services by [Charter School], including the name and title of the person being paid.

7. Records showing the amount of rent paid to Vahan Gureghian by the [Charter School] for the 2007–08 school year.

8. All rental or lease agreements between Vahan Gureghian and the [Charter School].

9. From the 1998–1999 fiscal year to the present, all [Charter School] bylaws for the board of trustees.

Reproduced Record at 48 (R.R. ——).

3. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

4. Our standard of review in a Right–to–Know Law case is whether an error of law was committed, constitutional rights were violated, or necessary findings of fact are supported by substantial evidence. *SWB Yankees LLC v. Gretchen Wintermantel,* 999 A.2d 672, 674 n. 2 (Pa.Cmwlth.2010) (reviewing trial court's order denying and dismissing appeal of final determination of OOR). Our scope of review is plenary. *Id.*

appeal was "deemed denied" because the OOR's final determination was not issued by May 4, 2009; (2) the appeals officer's failure to include Charter School in his *ex parte* communication with Requester to discuss a second extension of the final determination deadline violated Charter School's due process rights; (3) the records sought by Requester are not public records under the Right–to–Know Law; and (4) Requester's ability to pursue a Right–to–Know request was enjoined by the automatic stay issued in *The Philadelphia Inquirer's* bankruptcy proceeding.

In its first two issues, Charter School contends that Requester's appeal was "deemed denied" because OOR's final determination was not issued by May 4, 2009, the date set in the first extension. Charter School contends that the second extension was invalid because it was the result of an *ex parte* discussion between Requester and OOR's appeals officer. In support, Charter School points to Section 1101(b)(2) of the Right–to–Know Law, which states that if an "appeals officer fails to issue a final determination within 30 days, *the appeal is deemed denied.*" 65 P.S. § 67.1101(b)(2) (emphasis added).[5]

In response, Requester argues that its grant of a second extension to the appeals officer was entirely proper. Because the Right–to–Know Law gives the requester the sole discretion to grant an extension, Charter School's participation in the telephonic extension request made by the OOR's appeals officer was not needed. Requester dismisses Charter School's reliance upon Section 1101, noting that it does not require that a requester's extension of time to the OOR's appeals officer be made in writing. By contrast, Section 902 requires that a requester's extension of time to the agency, *i.e.*, Charter School, to be made in writing. 65 P.S. § 67.902(b)(2).[6] This difference in the statutory language shows that Section 1101 authorizes an appeals officer to request and obtain an extension by oral discussion with the requester. Alternatively, Requester argues that even if the OOR's final determination was untimely or had been tainted by an *ex parte* communication between Requester and the appeals officer, that problem was cured by the *de novo* review Charter School obtained from the trial court.

We begin with a review of Section 1101(b) of the Right–to–Know Law. It states, in relevant part, as follows:

Unless the *requester agrees otherwise,* the appeals officer shall make a final determination which shall be mailed to the requester and the agency within 30 days of receipt of the appeal. . . . If the appeals officer fails to issue a final de-

---

**5.** Section 1101(b) states, in relevant part, as follows:

**(b) Determination.—**

(1) Unless the requester agrees otherwise, the appeals officer shall make a final determination which shall be mailed to the requester and the agency within 30 days of receipt of the appeal filed under subsection (a).

(2) If the appeals officer fails to issue a final determination within 30 days, the appeal is deemed denied.

(3) Prior to issuing a final determination, a hearing may be conducted. The determination by the appeals officer shall be a final order. The appeals officer shall provide a written explanation of the reason for the decision to the requester and the agency.

65 P.S. § 67.1101(b).

**6.** Section 902 states, in relevant part:

If the date that a response is expected to be provided is in excess of 30 days, following the five business days allowed for in section 901, the request for access shall be deemed denied unless the requester has agreed in writing to an extension to the date specified in the notice.

65 P.S. § 67.902(b)(2).

termination within 30 days, the appeal is deemed denied.

65 P.S. § 67.1101(b)(1)-(2) (emphasis added). Section 1101 requires the appeals officer to issue a final determination within 30 days of the appeal. However, the *requester* may extend that deadline, and there is no requirement that the requester's agreement be made in writing.

■ Requester appealed Charter School's denial of its record request on March 18, 2009, which was docketed by the OOR on March 20, 2009, making the deadline for OOR's final determination April 20, 2009. 65 P.S. § 67.1101(b)(1). Thereafter, Requester agreed to two extensions. Requester had sole discretion on whether to grant an extension. 65 P.S. § 67.1101(b)(1). The purpose of the short deadlines set in the Right–to–Know Law is not to protect government agencies, such as Charter School, but to benefit requesters by ensuring swift processing of their record requests.[7] As we stated in *Bowling v. Office of Open Records*, 990 A.2d 813 (Pa.Cmwlth.2010), *appeal granted*, 609 Pa. 265, 15 A.3d 427 (2011), "the overall statutory scheme of the [Right–to–Know] Law clearly indicates the General Assembly's intent that issues regarding access to public records be resolved *expeditiously and efficiently*." *Id.* at 822–23 (emphasis added).

■ Charter School argues that the *ex parte* communication violated due process and, thus, the second extension of the final determination deadline was not valid. *Ex*

*parte* communications between a hearing officer and one party, or one party's counsel, are problematic because the excluded party has no reason to be confident that the communication was limited to the simple procedural request of the hearing officer for an extension. *See Colosimo v. Pennsylvania Electric Company*, 513 Pa. 155, 164–65, 518 A.2d 1206, 1210–11 (1986) (explaining that the prohibition on *ex parte* communications prevents improper influence and errors by ensuring both counsel participate). Once in conversation, the appeals officer and Requester's representative could discuss the merits of Requester's appeal.[8] However, we cannot say the *ex parte* communication here denied Charter School due process.

OOR proceedings are not subject to the Administrative Agency Law, 2 Pa.C.S. §§ 501–508, as are administrative agency proceedings that involve a property right or interest. The relevant Right–to–Know Law provisions are directed at protecting the requester's rights, not the agency's. Requester should not be placed out of court when it was the OOR's appeals officer, not Requester, that was responsible for the *ex parte* communication. Moreover, as pointed out by Requester, Charter School's participation would have been limited to listening because it could not object to Requester's grant of an extension.

■ In any case, any taint or procedural irregularity caused by the appeals officer's *ex parte* communication was cured

7. Other deadlines designed to effect a speedy release of public records include: Section 704(b)(2), 65 P.S. § 67.704 (requiring an agency to provide access to a printed form of a record unavailable to the requester within 5 days of receiving written request for such record); Section 707, 65 P.S. § 67.707 (requiring an agency to notify a third party within 5 days of receiving a request for a record containing a trade secret of the third party); and Section 901, 65 P.S. § 67.901 (requiring

an agency to make a good faith effort to determine whether the record is public and "respond as promptly as possible;" if the response is not made within 5 days, the request is deemed denied).

8. The easy way for an appeals officer to make an extension request is by an e-mail that copies all parties.

by the hearing before the trial court. In reviewing OOR's final determination under Section 1301(a) of the Right–to–Know Law,[9] the trial court was free to substitute its own findings of fact and conclusions of law for those made by OOR. As we explained in *Bowling v. Office of Open Records*, 990 A.2d 813, 818 (Pa.Cmwlth.2010) *appeal granted*, 609 Pa. 265, 15 A.3d 427 (2011), this "duty of fact-finding is consistent with a standard [of review] similar to *de novo* review." A *de novo* review entails full consideration of a case another time; the court is "substituted for ... the prior decision maker, and redecide[s] the case." *Forest Area School District v. Shoup*, 153 Pa.Cmwlth. 423, 621 A.2d 1121, 1125 (1993). Any procedural defects that take place before a *de novo* review are rendered irrelevant. *Id.* This is so because the court conducts its own review without having to give deference to the OOR's appeals officer.[10] Thus, any "taint" attributed in the OOR proceeding produced by the OOR appeals officer's *ex parte* communication with Requester was removed by Charter School's hearing before the trial court.

We conclude, in sum, that the Requester's extension of time to the appeals officer was not invalidated by the *ex parte* oral communication. Accordingly, OOR's final determination was timely, and Requester's appeal was not deemed denied under Section 1101(b)(2) of the Right–to–Know Law, 65 P.S. § 67.1101(b)(2).

■ In its third issue, Charter School argues that the records sought by Requester are not public records because they do not directly relate to the governmental function of the Charter School. It argues that Requester seeks private business records of Management that are unrelated to the operation of Charter School. Charter School argues that requiring disclosure of Management's business records will have a chilling effect on private contractors doing business with charter schools.

Requester counters that because Charter School did not state in its March 9, 2009, letter that Management's business records are not public records, it waived this argument. In any case, Requester argues that Charter School failed to prove that the records requested do not directly relate to the governmental functions of Charter School that are provided by Management. OOR and the trial court found a direct relationship.

Section 901 of the Right–to–Know Law provides that a request for records will be "deemed denied" if the agency fails to respond within 5 business days.[11] 65 P.S.

9. It states:
 The decision of the court shall contain findings of fact and conclusions of law based upon the evidence as a whole. The decision shall clearly and concisely explain the rationale for the decision.
 65 P.S. § 67.1301(a).

10. *De novo* judicial review has specialized meaning within the context of Pennsylvania's Local Agency Law. *See, e.g., McKeesport Area School District Board of Directors v. Collins*, 55 Pa.Cmwlth. 548, 423 A.2d 1112 (1980) (explaining that where the local agency, a school board, did not make a record of its proceedings, the trial was empowered to hold a *de novo* hearing and exercise discretion to impose a penalty upon a student different than that imposed by the school board). *De novo* review means, simply, "anew," and the concept of *de novo* review is applied outside the context of administrative practice and procedure. For example, our Supreme Court has explained that its "standard of review for a question of law is *de novo*." *Seven Springs Farm, Inc. v. Croker*, 569 Pa. 202, 801 A.2d 1212, 1216 n. 1 (2002). The court's scope of review of a legal question is plenary. *ODC v. Jepsen*, 567 Pa. 459, 787 A.2d 420 (2002).

11. It states:
 Upon receipt of a written request for access to a record, an agency shall make a good faith effort to determine if the record requested is a public record, legislative rec-

§ 67.901. If the agency denies a written request for records, in part or in whole, it must do so in writing and include:

(1) a description of the record requested. (2) The specific reasons for the denial, including a citation of supporting legal authority. (3) The typed or printed name, title, business address, business telephone number and signature of the open-records officer on whose authority the denial issued. (4) Date of the response. (5) The procedure to appeal the denial of access under this act.

Section 903 of Right–to–Know Law, 65 P.S. § 67.903. A request denial may be appealed to the OOR. 65 P.S. § 67.1101(a)(1).[12] The motive or intent of the requester is not a valid reason for denial. 65 P.S. § 67.302(b).[13]

Here, as noted, Charter School sent a letter on March 9, 2009, to Requester's counsel granting in part and denying in part the request for records. The letter stated that the denial was based on an improper attempt at discovery and, in any event, the records requested were not required to be disclosed under the Right–to–Know Law. Notably, the letter did not describe the records requested, cite to legal authority, or describe the appeal procedures, all of which are required by Section 903 of the Right–to–Know Law.

In *Signature Information Solutions, LLC v. Aston Township*, 995 A.2d 510 (Pa.Cmwlth.2010), this Court held that an agency's appeal of an OOR final determination is limited to the grounds it specifies in its response to a Right–to–Know request. *Id.* at 514. In *Signature Information*, the Township's specific reason for denying a request was that the information was available on the county website. The Township cited Section 704 of the Right–to–Know Law as supporting legal authority.[14] After the requester appealed to the

---

ord or financial record and whether the agency has possession, custody or control of the identified record, and to respond as promptly as possible under the circumstances existing at the time of the request. All applicable fees shall be paid in order to receive access to the record requested. The time for response shall not exceed five business days from the date the written request is received by the open-records officer for an agency. If the agency fails to send the response within five business days of receipt of the written request for access, the written request for access shall be deemed denied.

65 P.S. § 67.901.

12. Section 1101(a)(1) states:

If a written request for access to a record is denied or deemed denied, the requester may file an appeal with the [OOR] or judicial, legislative or other appeals officer designated under section 503(d) within 15 business days of the mailing date of the agency's response or within 15 business days of a deemed denial. The appeal shall state the grounds upon which the requester asserts that the record is a public record, legislative record or financial record and

shall address any grounds stated by the agency for delaying or denying the request.

65 P.S. § 67.1101(a)(1).

13. Section 302(b) of the Right–to–Know Law states: "A local agency may not deny a requester access to a public record due to the intended use of the public record by the requester unless otherwise provided by law." 65 P.S. § 67.302(b).

14. Section 704 states:

(a) **General rule.**—In addition to the requirements of section 701, an agency may make its records available through any publicly accessible electronic means.

(b) **Response.**—

(1) In addition to the requirements of section 701, an agency may respond to a request by notifying the requester that the record is available through publicly accessible electronic means or that the agency will provide access to inspect the record electronically.

(2) If the requester is unwilling or unable to access the record electronically, the requester may, within 30 days following receipt of the agency notification, submit

OOR, the Township changed its reason for denying the request. The Township argued that the request was improper because it would effectively require the Township to produce a research paper; under Section 705 of the Right–to–Know Law, a request cannot make this kind of demand of a government agency.[15] This Court held that the Township could not offer these new grounds for a denial. To do so would undermine the Right–to–Know Law's goal to resolve disputes expeditiously. *See also Department of Transportation v. Office of Open Records*, 7 A.3d 329 (Pa.Cmwlth.2010) (holding that department's failure to cite a specific section of Right–to–Know Law for its denial precluded the department from asserting that reason on appeal).

Here, Charter School waived its right to argue that documents in the possession of Management are not public records. The requirements of Section 903 are mandatory. Charter School was required to specify the grounds for its denial, with specific reference to legal authority. Charter School's March 9, 2009, letter did not do so, and it has waived the right to raise this issue now.

█ In any case, Charter School's assertions that Management's business records need not be disclosed lacks merit.

The Right–to–Know Law addresses public records that may be in the custody of a private entity as opposed to an agency. Section 506 states, in relevant part, as follows:

> A public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, and which directly relates to the governmental function and is not exempt under this act, shall be considered a public record of the agency for purposes of this act.

65 P.S. § 67.506(d)(1). The agency bears the burden of proving, by a preponderance of the evidence, that a record is exempt from public access. 65 P.S. § 67.708(a)(1).[16] Section 506(d)(1) "puts a third party in the same position as an agency for purposes of the [Law]." *SWB Yankees*, 999 A.2d at 675. The trial court agreed with the OOR's conclusion that the services provided by Management directly relate to the governmental function of Charter School, *i.e.*, public education. Some of the records sought by Requester may reach beyond the governmental function performed by Management, but Charter School failed to so specify them in its written March 9, 2009, response.

---

a written request to the agency to have the record converted to paper. The agency shall provide access to the record in printed form within five days of the receipt of the written request for conversion to paper.
65 P.S. § 67.704.

**15.** Section 705 states:

When responding to a request for access, an agency shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record.

65 P.S. § 67.705.

**16.** "Governmental function" is not defined in the Right–to–Know Law. Under the prior version of the Right–to–Know Law, organizations performing an "essential governmental function" were subject to the Right–to–Know Act, Act of June 21, 1957, P.L. 390, *as amended, formerly* 65 P.S. § 66.1–66.9, repealed by Act of February 14, 2008, P.L. 6, 65 P.S. § 67.3102, effective January 1, 2009. In *SWB Yankees, LLC v. Gretchen Winternantel*, 999 A.2d 672, 675 (Pa.Cmwlth.2010), *appeal granted*, 610 Pa. 291, 18 A.3d 1145 (2011), we explained that the removal of the qualifier "essential" broadened the scope of the Law.

Charter School cites *East Stroudsburg University Foundation v. Office of Open Records,* 995 A.2d 496 (Pa.Cmwlth.2010), *appeal denied,* 610 Pa. 602, 20 A.3d 490 (2011), to support its argument that the requested documents are private business records not subject to disclosure. In *East Stroudsburg,* the East Stroudsburg University Foundation refused to release records that related to the Foundation's fundraising for the university. We explained that when an agency contracts with a private entity, the Right–to–Know Law requires disclosure of those records directly related to the governmental function. We concluded that the documents generated for private fundraising were not proprietary but directly related to the university's governmental function.

*East Stroudsburg* does not support Charter School's position that documents created by a private entity are exempt. To the contrary, *East Stroudsburg* gives a broad reading of "governmental function." Here, Charter School's governmental function is to educate children. Charter School has contracted with Management to operate its school.[17] *See Zager v. Chester Community Charter School,* 594 Pa. 166, 174, 934 A.2d 1227, 1232 (2007) ("[C]harter schools, as independent public schools created for the purpose of providing the essential governmental service of education in a constitutionally mandated manner, are necessarily included among the agencies that are subject to the Right–to–Know Act."). It follows that Management's records relate to Charter School's governmental function and are subject to disclosure. *SWB Yankees,* 999 A.2d at 675 ("[T]he [Right–to–Know Law] clearly puts a third party in the same position as an agency for purposes of the [Right–to–Know Law].").

Charter School's "chilling effect" argument is one more suited for the General Assembly. The Court's duty is to interpret and apply the Right–to–Know Law as written. We hold that Charter School has waived its right to contend that the records in the possession of Management are not public records. In any case, the records are public records because they directly relate to Charter School's governmental function.

 In its final issue, Charter School argues that Requester is barred from pursuing and litigating a Right–to–Know request because of the automatic stay in *The Philadelphia Inquirer* bankruptcy. Charter School notes that Requester's document request is strikingly similar to subpoenas issued to two Charter School Board members.

In late December of 2008, *The Philadelphia Inquirer* ran a series of articles critical of Charter School and Management. Daniel Hardy authored one of the articles and was credited with contributing to another article. On January 6, 2009, Management filed an action against Defamation Defendants in the Delaware County Court of Common Pleas.[18] On February 17, 2009, Defamation Defendants filed preliminary objections and issued a subpoena to Spencer B. Seaton, Jr., Chairman of the Board of Trustees of Charter School, to appear for a deposition and produce documents. A similar subpoena was issued to Joseph T. Kelly, Jr., another member of the Board of Trustees. On February 22, 2009, Philadelphia Newspapers, LLC d/b/a

---

**17.** The Right–to–Know Law defines "local agency" as "[a]ny political subdivision, intermediate unit, *charter school,* cyber charter school or public trade or vocational school."

(emphasis added). Section 102 of the Right–to–Know Law, 65 P.S. § 67.102.

**18.** *Gureghian v. The Philadelphia Inquirer,* (No. 09–000094, C.C.P.Del.).

*The Philadelphia Inquirer* filed for Chapter 11 Bankruptcy.[19] As a result of the bankruptcy filing, all proceedings involving *The Philadelphia Inquirer,* including the defamation suit, were subjected to an automatic stay.

On March 23, 2009, *The Philadelphia Inquirer* requested the bankruptcy court to expand the scope of the automatic stay to include all Defamation Defendants and to enjoin Management from conducting discovery of Defamation Defendants.[20] After a hearing on the matter, the court issued a temporary restraining order enjoining all parties from doing discovery. Thereafter, the court issued a preliminary injunction, which expired on November 9, 2009.

Requester argues that the bankruptcy court made clear that this Right–to–Know litigation was not subject to the stay and expressly allowed it to proceed after November 9, 2009.[21] Requester also argues that even if the intent here was to circumvent the discovery stay in the defamation case, it is irrelevant because the Right–to–Know Law makes clear that the reason for a request is not a valid reason to deny the request. Section 302 of the Right–to–Know Law, 65 P.S. § 67.302(b).

Charter School cites *Tapco, Inc. v. Township of Neville,* 695 A.2d 460 (Pa. Cmwlth.1997), for the proposition that a Right–to–Know request is not a substitute for civil litigation discovery. *Tapco* is inapposite. First, *Tapco* noted, in *dictum,* that the record request in question *would have been* quashed had the Township objected because "the request read like discovery requests rather than Right–to–Know requests." *Id.* at 461. This is because the Township would have been required to do research and not simply make documents available. Second, Section 302(b) in the current version of the Right–to–Know Law states that the intended use of the records requested by the requester is not a valid reason for denial, unless there is separate law that so provides. No such other law has been identified by Charter School.

The trial court did not err in holding that the bankruptcy of *The Philadelphia Inquirer* did not bar this proceeding. It may be that Requester is using the Right–to–Know Law to conduct discovery in the defamation action, which has been stayed. This result may seem unfair because Charter School is barred by the bankruptcy proceeding from doing similar discovery against the Defamation Defendants. Unfortunately for Charter School, it matters not. A requester's motive under the Right–to–Know Law has been made irrelevant by the legislature. 65 P.S. § 67.302(b) ("A local agency may not deny a requester access to a public record due to the intended use of the public record by the requester unless otherwise provided by law."). Charter School is an "agency." As such, it is bound by the directives of the legislature for all agencies, and whether those directives are fair or wise is beyond the court's proper field of inquiry.

For the foregoing reasons, we affirm the order of the trial court.

**19.** *In re: Philadelphia Newspapers, LLC,* (No. 09–11204, Bankr.E.D.Pa.).

**20.** *Philadelphia Newspapers, LLC v. Lane (In re: Philadelphia Newspapers, LLC),* (No. 09–00085, Bankr.E.D.Pa.).

**21.** *See Philadelphia Newspapers, LLC v. Gureghian (In re: Philadelphia Newspapers, LLC),* (No. 09–00228, Bankr.E.D.Pa., Aug. 21, 2009) (enjoining Right–to–Know Law appeal); *Philadelphia Newspapers, LLC v. Gureghian* (No. 09–00228, Bankr.E.D.Pa., Nov. 10, 2009) (refusing to extend August 21, 2009, injunction of Right–to–Know Law appeal).

## ORDER

AND NOW, this 29th day of February, 2012, the order of the Court of Common Pleas of Delaware County, dated June 21, 2010, in the above-captioned matter, is hereby AFFIRMED.