IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew Haverstick,                     :
          Petitioner                    :
                                        :   No. 1213 C.D. 2020
          v.                            :   Argued: December 13, 2021
                                        :
Pennsylvania Office                     :
of Attorney General,                    :
          Respondent                    :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION
BY JUDGE McCULLOUGH                         FILED: April 12, 2022


          Matthew Haverstick (Requester) petitions for review of the October 30, 2020 final determination of a Right-to-Know Law (RTKL)[1] Appeals Officer of the Pennsylvania Office of Attorney General (OAG), which affirmed the decision of an OAG Open Records Officer to grant in part and deny in part his RTKL request.[2] Requester presently challenges the withholding of certain *ex parte* communications

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

[2] This matter was argued seriately with two other appeals concerning RTKL requests made by this same Requester. *See Haverstick v. Pennsylvania State Police* (Pa. Cmwlth., No. 1042 C.D. 2020, filed April 12, 2022) (unreported) (*Haverstick I*); *Haverstick v. Pennsylvania State Police* (Pa. Cmwlth., No. 1214 C.D. 2020, filed April 12, 2022) (unreported) (*Haverstick II*). Although the underlying RTKL requests in *Haverstick I* and *II* related to similar matters as in the instant appeal, the legal issues presented here do not overlap with those at issue in those appeals.

between members of the OAG and the OAG Appeals Officer. Upon review, we reverse the final determination of the OAG Appeals Officer.

## Background

On June 23, 2020, the OAG received a RTKL request from Requester, seeking:

> From March 12, 2020[,] onward, any and all emails, text messages, or other communications about any Right to Know request, or any response thereto from this Request[e]r, including but not limited to, Request No. 2020-051.

(OAG Appeals Officer Determination at 1.)

On August 6, 2020, the OAG Open Records Officer issued a final response letter, which granted in part and denied in part Requester's request. The Open Records Officer informed Requester that certain records would be produced upon receipt of all applicable fees. A number of records, however, would be withheld pursuant to exemptions from disclosure listed in the RTKL, specifically: (1) the personal identification information exemption; (2) the predecisional deliberation exemption[3]; and (3) the attorney-work product doctrine.

On August 20, 2020, Requester paid the applicable fees. On August 31, 2020, having not yet received the requested records from the OAG, Requester filed an

---

[3] The internal, predecisional deliberation exception provides, in relevant part, that the following are exempt from disclosure:

> The internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.

Section 708(b)(10)(i)(A) of the RTKL, 65 P.S. §67.708(b)(10)(i)(A).

appeal to the OAG, in which he asserted that he could not evaluate the merits of the OAG's response because he had not received the documents. He further contended that the exemptions cited by the Open Records Officer were not adequately supported by an affidavit.

The Appeals Officer for OAG acknowledged receipt of Requester's appeal via a letter dated September 8, 2020, and then set a schedule for the submission of additional documentation. On September 14, 2020, the Open Records Officer submitted a response to the appeal, including an affidavit from the Open Records Officer in support of the redactions and withholdings. On September 21, 2020, Requester submitted a supplemental position statement and included the OAG's full production, including the redacted documents. Requester asserted that the RTKL Officer's affidavit was insufficient to support the OAG's claimed exemptions. Requester requested that the Appeals Officer order the Open Records Officer to produce a privilege log and to review the materials *in camera*. The Appeals Officer agreed and, by letter dated September 28, 2020, informed the parties that *in camera* review of the documents would be necessary to render a final determination on the appeal.

On September 29, 2020, the Open Records Officer provided the Appeals Officer with the relevant documents—those withheld in their entirety and the unredacted versions of those which had been disclosed in redacted form. On September 30, 2020, the Appeals Officer requested that the Open Records Officer submit a privilege log of the redacted and withheld documents. On October 7, 2020, the Open Records Officer provided the Appeals Officer with two privilege logs—one for the redacted documents and one for the withheld documents.

On October 14, 2020, Requester provided a supplemental submission (entitled "Reply Brief"), in which he raised concerns about apparent *ex parte* communications between the Appeals Officer and members of the OAG.

The Appeals Officer ultimately denied Requester's appeal. The Appeals Officer first rejected Requester's argument regarding the sufficiency of the supporting affidavit, noting that she performed an *in camera* review of the relevant documents, thus rendering the sufficiency of the affidavit immaterial. With regard to the documents that were redacted, the Appeals Officer observed that the redacted information consisted of personal identification information, namely personal telephone numbers and email addresses. Those redactions were thus proper.

Turning to the 98 documents withheld in their entirety, the Appeals Officer concluded that the Open Records Officer correctly determined that each document reflected internal, predecisional deliberations, and was thus exempt from disclosure under section 708(b)(10)(i)(A) of the RTKL. Each document contained "communications that were made for the purpose of considering all available legal strategies and options for responding to Request No. 2020-051 and its appeal, including documents/communications regarding the best course of action in responding" to that request and appeal. (OAG Appeals Officer Determination at 5.) The Appeals Officer stated that her *in camera* review of the documents confirmed this characterization of the records. The Appeals Officer further identified six documents that were not listed on the privilege log for the withheld documents, but likewise reflected internal, predecisional deliberations. The Appeals Officer concluded that this omission was an error. Moreover, the Appeals Officer concluded that 10 of the withheld documents were protected by the attorney-work product doctrine because her *in camera* review revealed that each document contained draft documents, such as affidavits or legal

4

responses, written by an OAG attorney and circulated to other OAG attorneys. *Id.* at 6-7. Thus, the Appeals Officer found no error in the RTKL Officer's conclusion that each withheld document was exempt from disclosure.

With regard to the issue currently before the Court, the Appeals Officer noted Requester's contention that Document Nos. 2, 4, 6, 9, and 24-27 on the withheld log must be produced because they reflect *ex parte* communications between the Appeals Officer and members of the OAG. The privilege log stated that these documents contain correspondence between the Appeals Officer and either Karen Romano, the attorney who submitted the OAG's verification in the underlying appeal relating to Request No. 2020-051, or Sharon Maitland, the Open Records Officer in the instant case. None of those communications included Requester or his counsel.

The Appeals Officer repeated her conclusion that the referenced documents were properly withheld under the predecisional deliberation exception, and "contain communications between OAG staff regarding administrative logistics relating to the appeal of Request No. 2020-051." (OAG Appeals Officer Determination at 7.) The Appeals Officer further cited *Kaplin v. Lower Merion Township*, 19 A.3d 1209, 1215-16 (Pa. Cmwlth. 2011), for the proposition that a concern over *ex parte* communications does not negate the application of the predecisional deliberation exemption. Thus, the Appeals Officer concluded, the fact that certain documents contain *ex parte* communications does not necessitate their production.

Requester then sought review in this Court, specifically regarding the Appeals Officer's conclusion vis-à-vis the withholding of the *ex parte* communications contained within the responsive records.[4]

---

[4] As discussed *infra*, the procedures relating to RTKL requests submitted to the OAG differ from those applicable to most other agencies. However, as in other RTKL appeals, our standard of **(Footnote continued on next page…)**

## Arguments

Requester contends that any *ex parte* communication between a RTKL appeals officer and one party's counsel is inappropriate and, therefore, forbidden. Requester cites *Colosimo v. Pennsylvania Electric Company*, 518 A.2d 1206, 1210-11 (Pa. 1986), for the general proposition that *ex parte* communications are improper, but in the RTKL context, the only authority that he cites is *Chester Community Charter School v. Hardy*, 38 A.3d 1079, 1084 (Pa. Cmwlth. 2012), *vacated on other grounds*, 74 A.3d 118 (Pa. 2013). (Requester's Br. at 16.) *Hardy* expressed disapproval of *ex parte* communications between an Office of Open Records (OOR) appeals officer and a requester, which concerned a deadline extension. However, the *Hardy* Court did not find that the *ex parte* communication deprived the opposing party of due process, and it did not reverse the OOR's final determination.

Requester takes issue with the Appeals Officer's reliance upon *Kaplin*. Although *Kaplin* concluded that communications between township board of commissioner members could be subject to the predecisional deliberation exemption, Requester notes that the communications at issue in *Kaplin* were *between respondents*, not between a party and a RTKL appeals officer. (Requester's Br. at 17.) Where *ex parte* communications are between a party and the appeals officer, Requester opines that the opposing party cannot be confident that the communications were for a proper purpose.

Further, Requester argues that *ex parte* communications between a RTKL appeals officer and agency members cannot constitute "internal" predecisional

review remains *de novo*. *See Pennsylvania Office of Attorney General v. Philadelphia Inquirer*, 127 A.3d 57, 60 (Pa. Cmwlth. 2015) (citing *Meguerian v. Office of the Attorney General*, 86 A.3d 924, 927 n.4 (Pa. Cmwlth. 2013)) ("This Court exercises *de novo* review of appeals officers' decisions under the RTKL pertaining to Commonwealth agencies.").

6

deliberations under section 708(b)(10)(i)(A) of the RTKL, because the appeals officer, according to Requester, is an "external" officer. The exception applies only to "internal, predecisional deliberations" that are between agency "members, employees, officials" or "between agency members, employees or officials and members, employees or officials of another agency." (Requester's Br. at 19 (quoting 65 P.S. §67.708(b)(10)(i)(A)).) The key element, Requester maintains, is that the communications be "internal." And according to Requester, the agency's RTKL appeals officer is "external" and "neutral," and, therefore, cannot engage in internal, predecisional deliberations with members of the agency. (Requester's Br. at 20.)

The OAG, for its part, first suggests that the communications at issue were merely "logistical in nature and do not contain any discussion regarding the merits of Requester's appeal or even the general subject matter of his appeal." (OAG's Br. at 12.) Thus, the OAG opines, there was nothing improper in the *ex parte* communications and none of them would be of particular interest to Requester. Even assuming that they were improper *ex parte* communications, moreover, the OAG argues that this would not remove those communications from the scope of the predecisional deliberation exception.

The OAG reiterates the Appeals Officer's reliance upon *Kaplin*, and highlights the following passage:

> We believe that, even if there was a violation of the separation of powers within the [t]ownship staff, *the staff's advice to the [b]oard regarding the logistics of issuing a decision is still an internal, predecisional communication*. However, as shown by the above statutory language, even if the alleged separation of powers problem required the [t]ownship staff to be considered as a separate agency from the [b]oard, the communication could be considered to be predecisional deliberations between agency members and employees of another agency.

*Id.* at 13 (quoting *Kaplin*, 19 A.3d at 1216) (OAG's emphasis). Although Requester contends that *Kaplin* is distinguishable because it did not involve *ex parte* communications with a RTKL appeals officer, the OAG notes that, in *Kaplin*, the communications were between township staff and the township board of commissioners, the latter of which was the adjudicator for a conditional land use application to which the township staff was opposed.

The OAG analogizes its Appeals Officer to the board of commissioners in *Kaplin*, as she was an employee of the OAG serving as an adjudicator on a matter involving OAG staff. In this regard, because the Appeals Officer is an employee of the OAG, the OAG disputes Requester's characterization of the Appeals Officer as an "external" entity. But even if the Appeals Officer was deemed "external," the OAG argues, this would not defeat the application of the predecisional deliberation exception, because that exception also applies to communications between agency officials and employees of *another* agency. (OAG's Br. at 14 (quoting *Kaplin*, 19 A.3d at 1216 ("[E]ven if the alleged separation of powers problem required the [t]ownship staff to be considered as a separate agency from the [b]oard, the communication could be considered to be predecisional deliberations between agency members and employees of another agency.")).)

Notably, in reply, Requester suggests that the OAG's characterization of the documents as merely "clerical" or "logistical" in nature defeats its invocation of the predecisional deliberation exception, because communications subject to that exemption must be "deliberative" in character. (Reply Br. at 2 (citing *McGowan v. Pennsylvania Department of Environmental Protection*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014)).) Based upon the OAG's description of the documents at issue,

8

Requester contends that the "deliberative" aspect is missing, and that the communications must therefore be disclosed.

## Discussion

At the outset, we note that the precise legal issue in dispute is not squarely resolved by the precedents upon which the parties focus. The parties primarily discuss the *Kaplin* case, as noted above. As Requester stresses, however, *Kaplin* did not involve *ex parte* communications between a RTKL appeals officer and a party to the RTKL proceedings. Rather, *Kaplin* involved a request for communications of a township board of commissioners regarding a conditional use application, and the relevant records consisted of communications between that board and other township staff, which were alleged to constitute predecisional deliberations. *See Kaplin*, 19 A.3d at 1215. There was no issue in *Kaplin* relating to *ex parte* communications with the OOR appeals officer—the participant who would be most analogous to the OAG Appeals Officer here. Accordingly, Requester is correct that the instant case is readily distinguishable from *Kaplin*.

The only relevant precedent that Requester cites is *Hardy*, and that case does concern an *ex parte* communication between a party and an OOR appeals officer. However, the communication at issue in *Hardy* consisted merely of the OOR appeals officer asking the requester for a deadline extension. The opposing party contended that the deadline extended through the *ex parte* communication was invalid, and that it violated that party's due process rights. This Court disagreed, but nonetheless expressed concern about the *ex parte* communication. We noted that "[e]*x parte* communications between a hearing officer and one party, or one party's counsel, are problematic because the excluded party has no reason to be confident that the communication was limited to the simple procedural request of the hearing officer for

9

an extension." *Hardy*, 38 A.3d at 1084 (citing *Colosimo*, 518 A.2d at 1210-11). We further noted that the easiest way for the appeals officer to avoid such *ex parte* communications is to send an email that includes all of the parties. *Id.* at 1084 n.8. Nonetheless, we did not find that the communication deprived the complaining party of due process, and we did not reverse the OOR's determination. We noted that OOR proceedings are not subject to the Administrative Agency Law, 2 Pa.C.S. §§501-08. *Hardy*, 38 A.3d at 1084. Further, the complaining party would not have been permitted to object to the requester's grant of a deadline extension. Moreover, we stated that any "taint or procedural irregularity caused by the appeals officer's *ex parte* communication was cured" by the subsequent hearing before a court of common pleas. *Id.* at 1084-85.

Thus, although Requester is correct that this Court in *Hardy* expressed disapproval of *ex parte* communications in the RTKL context, the communication in that case was not a defect that warranted reversal. Moreover, the relevance of *Hardy* is diminished by the fact that the predecisional deliberation exception was not at issue in that case. We are left with no directly relevant precedent relating to *ex parte* communications during RTKL appeals, and whether such communications may constitute predecisional deliberations under section 708(b)(10)(i)(A) of the RTKL.

The instant case further implicates a unique feature of the RTKL, the significance of which is not addressed by the parties. Requester places great emphasis upon his assertion that the OAG Appeals Officer is an "external" entity, and that, categorically, she may not participate in "internal" predecisional deliberations. Requester, however, does not cite any authority for this proposition or support his suggestion with anything beyond bare assertion. Notably, the OAG is one of the small number of agencies listed in the RTKL for which appeals officers are *not* designated by the OOR, and which instead select their own appeals officers from *within* the

10

agency. *See* section 503(d)(1) of the RTKL, 65 P.S. §67.503(d)(1) ("The *Attorney General*, State Treasurer and Auditor General shall each designate an appeals officer to hear appeals under Chapter 11.") (emphasis added); *see also Bowling v. Office of Open Records*, 75 A.3d 453, 457 (Pa. 2013) ("[J]udicial agencies, legislative agencies, the *Attorney General*, State Treasurer, and Auditor General . . . shall *designate their own appeals officers* to hear appeals from the respective agency's determinations. . . . Thus, appeals from final determinations of these . . . agencies are not heard by the OOR.") (emphasis added). Accordingly, it is not apparent that the OAG Appeals Officer is in any manner an "external" entity, as Requester would have us conclude. Quite to the contrary, the RTKL specifies that the OAG is one of the few agencies whose appeals officers are distinctly *internal*. Unfortunately, the OAG does not discuss the significance, if any, of the statutory distinction between its appeals officers and those designated by the OOR.

The difficulty is that the distinction (or lack thereof) between the *OAG* Appeals Officer and the OOR conceivably could bear upon the character of the appeal proceedings. This Court has repeatedly observed that the OOR is a "quasi-judicial" tribunal. *See Arneson v. Wolf*, 117 A.3d 374, 386 (Pa. Cmwlth.) (*en banc*), *aff'd & adopted*, 124 A.3d 1225 (Pa. 2015) ("Based upon the OOR's essential nature and express statutory duties, the courts of this Commonwealth have already held that the OOR is a quasi-judicial tribunal."). If the OAG Appeals Officer likewise engages in a "quasi-judicial" function under the RTKL, then this conclusion would appear to support Requester's position, inasmuch as *ex parte* communications between a party and a judicial body are improper. *See Colosimo*, 518 A.2d at 1210-11.[5]

---

[5] Notably, section 1102 of the RTKL, 65 P.S. §67.1102, concerns the duties of RTKL appeals officers and the procedures that they are to employ. Subsection (a)(3) of section 1102 provides that **(Footnote continued on next page…)**

Even though OAG appeals officers are selected from within the agency, the nature of their task in considering RTKL appeals remains quasi-judicial. Just as courts must refrain from *ex parte* communications with parties, the same concerns arise in this context. As this Court stated in *Hardy*: "*Ex parte* communications between a hearing officer and one party, or one party's counsel, are problematic because the excluded party has no reason to be confident that the communication was limited to the simple procedural request of the hearing officer for an extension." *Hardy*, 38 A.3d at 1084 (citing *Colosimo*, 518 A.2d at 1210-11). Thus, we equally emphasize here the problematic nature of these *ex parte* communications. Although OAG appeals officers are selected from within the agency, they are nonetheless required to perform their "quasi-judicial" duties in an impartial manner. Accordingly, the OAG is cautioned to refrain from inappropriate *ex parte* communications when considering similar requests in the future.

The ultimate disposition of this matter, however, is made possible because the record and the briefing in this case reveal another, significantly clearer basis upon which to conclude that Requester is entitled to the communications sought. As Requester notes in his Reply Brief, the OAG's Brief relates several characterizations of the records at issue, which belie the conclusion that the communications contained therein fall within the predecisional deliberation exception. To establish the predecisional deliberation exception, an agency is required to show that: "(1) the information is internal to the agency; (2) *the information is deliberative in character*; and (3) the information is prior to a related decision, and thus 'predecisional.'"

_____

appeals officers shall "[c]onsult with agency counsel as appropriate." 65 P.S. §67.1102(a)(3). While the statutory language does not elaborate upon the nature of an "appropriate" consultation with agency counsel, on its face, this language at least plausibly suggests that the legislature envisioned the possibility of *ex parte* communications between RTKL appeals officers and attorneys for an agency.

*McGowan*, 103 A.3d at 381 (quoting *Carey v. Department of Corrections*, 61 A.3d 367, 379 (Pa. Cmwlth. 2013)) (emphasis added). Moreover, "[i]n order to demonstrate that the withheld documents are deliberative in character, an agency must 'submit evidence of specific facts showing how the information relates to deliberation of a particular decision.'" *Id.* at 383 (quoting *Carey*, 61 A.3d at 379).

In its brief, the OAG describes the documents as follows:

> [T]hese documents consist of the same or similar e-mail chains relating to providing the Appeals Officer with the appeal documents submitted by [Requester], assigning the appeal to the Appeals Officer, designating which OAG personnel would be assisting the Appeals Officer, and making sure that other individuals who had conflicts in this case did not have communications with the Appeals Officer regarding this case.

(OAG's Br. at 12.)[6] The OAG further summarizes that the communications "are *logistical in nature* and *do not contain any discussion regarding the merits of [Requester's] appeal or even the general subject matter of his appeal*." *Id.* (emphasis added). As Requester notes in his Reply Brief, this description is inconsistent with the conclusion that the communications were "deliberative" in nature. If the communications are purely "logistical" and do not even concern the "general subject matter" of the RTKL request, then it is difficult to see how those communications could relate to the "deliberation of a particular decision." *McGowan*, 103 A.3d at 383.

As such, we conclude that, while it appears that the *ex parte* communications in question were improper, the communications at issue simply do not fall within the definition of predecisional deliberations for purposes of section 708(b)(10)(i)(A) of the RTKL.

---

[6] This Court has reviewed the relevant documents in the Sealed Certified Supplemental Record, and the OAG's description of the communications is accurate.

Accordingly, the final determination of the OAG Appeals Officer is reversed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew Haverstick,           :
          Petitioner    :
                      :   No. 1213 C.D. 2020
      v.             :
                      :
Pennsylvania Office      :
of Attorney General,     :
          Respondent  :

## *<u>ORDER</u>*

AND NOW, this 12th day of April 2022, the October 30, 2020 final determination of the Right-to-Know Law Appeals Officer of the Pennsylvania Office of Attorney General is REVERSED.

_____
PATRICIA A. McCULLOUGH, Judge