**Mid Valley School District v. Warshawer**

C.P. of Lackawanna County, No. 13 CV 1528

*William W. Warren, Jr.* and *Donald P. Dolan,* for petitioner.

*Jeffrey C. Venzie*, for respondent.

NEALON, *J.*, September 17, 2013—A school

district, which is embroiled in a payment dispute with a contractor who provided services on an elementary school construction project, has appealed an administrative determination directing the school district to grant the contractor's counsel access to records pertaining to that construction project pursuant to the Right-to-Know Law ("RTKL"), 65 P.S. §§ 67.101-67.3104. The school district has raised the following issue which has not yet been decided under the RTKL: whether a document discovery restriction contained in the binding arbitration provisions of the parties' construction contract bars the contractor's agent from obtaining materials that would otherwise be discoverable as "public records" under the RTKL? The school district alternatively contends that it is not obligated to produce certain records that are in the possession of independent contractors rather than the school district.

As a public entity, the school district is subject to the public disclosure mandates of the RTKL, and those statutory directives supersede any contractual provisions which limit the litigants' discovery rights to only those documents which the arbitrator compels a party to produce. Although the grant of access to the school construction project records may enable the contractor's counsel to secure pre-arbitration discovery, the requester's motive or intention in seeking the documents cannot serve as a valid basis for denying access to "public records" of the school district. Furthermore, to the extent that the instant RTKL requests seek the production of records in the custody of the project architect, construction manager or contractors, they are nevertheless discoverable "public records" under Section 506(d)(1) of the RTKL, 65 P.S. § 67.506(d)(1), since those third parties were contracted to perform the school district's "governmental function" of constructing and providing suitable school facilities, and the records requested directly relate to the performance of that governmental function. As a consequence, the school

district's appeal will be denied and it will be directed to produce the requested "public records" within thirty (30) days.

## I. FACTUAL BACKGROUND

On August 3, 2011, Mar-Paul Construction, Inc. ("Mar-Paul") entered into a $6,645,000.00 contract with Petitioner, Mid Valley School District ("the District"), to provide construction services in connection with the renovation of the Mid Valley Elementary School. (Docket entry no. 7, exhibit A). Section 6.2 of the construction agreement addresses "Binding Dispute Resolution" for any contract claims involving the District and Mar-Paul, and identifies "[a]rbitration pursuant to Section 15.4 of AIA Document A232-2009" as the exclusive "method of binding dispute resolution." (*Id.* at p. 9). Section 13.1 of the construction contract is entitled "Governing Law," and provides that "[t]he Contract shall be governed by the law of the place where the Project is located except that, if the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 15.4." (Docket entry no. 7, exhibit B at p. 37).

Section 15.4 of AIA Document A232-2009 states that the arbitration of any such claims shall be governed "by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement." (*Id.* at p. 42). The American Arbitration Association Construction Industry Arbitration Rules (the "AAA Rules") contain provisions regulating the parties' "Exchange of Information," and state that "the arbitrator may direct…the production of documents and other information" and "is authorized to resolve any disputes concerning the exchange of information." (Docket entry no. 7, exhibit D at pp. 29-30). Section R-24(d) of the AAA Rules provides that "[t]here shall be no other

discovery, except as indicated herein, unless so ordered by the arbitrator in exceptional cases." (*Id.* at p. 30).

The construction agreement executed by Mar-Paul and the District includes specific completion dates for various phases of the construction work, and requires Mar-Paul to pay liquidated damages of $5,000.00 per day "for each consecutive day of delay until the work is substantially complete." (Docket entry no. 7, exhibit A at p. 3). The Mid Valley Elementary School construction project experienced delays, and by letter dated March 26, 2012, Mar-Paul requested extensions of time relative to the completion dates for the "classroom addition" and "cafeteria addition" due to delays that allegedly "were beyond the control of Mar-Paul." (Docket entry no. 7, exhibit C). The project construction manager, Palumbo Construction Management ("Palumbo"), advised the District and its solicitor that it had "preliminarily reviewed the contents and details" of Mar-Paul's correspondence with the project architect, Burkavage Design Associates ("Burkavage"), and stated that Palumbo and Burkavage both "take issue with the contents and form" of Mar-Paul's letter requesting extensions of time. (*Id.* at p. 17). After Mar-Paul submitted an "Application and Certificate for Payment" to the District seeking payment of $305,999.75, the District transmitted a letter to Mar-Paul on December 17, 2012, stating that it was "withholding the amount of $305,999.75 from this Payment Application" to reflect set-offs attributable to "delay damages" and claims "for delay" that had been submitted by three subcontractors, Jerry Coyne Electrical Company, A. J. Demor & Sons, Inc., and Yannuzzi, Inc.[1] (Docket entry no. 6, exhibits E and F).

---

1. Mar-Paul's Application for payment reflected that it had previously submitted "Certificates for Payment" totaling $5,895,882.40. (Docket entry no. 6, exhibit E at p. 1).

On the following day, December 18, 2012, respondent, Sam L. Warshawer, Jr., Esquire ("Warshawer"), of the law firm of Venzie, Phillips & Warshawer, submitted a request to the District seeking the production of various records pursuant to the Pennsylvania RTKL. (Docket entry no. 1, exhibit D). Warshawer requested twenty six categories of records, not including subparts, concerning the Mid Valley Elementary School construction project. (*Id.* at pp. 4-7). It is undisputed that Warshawer serves as legal counsel to Mar-Paul. (Transcript of proceedings ("T.P.") on 7/15/13 at pp. 34-35).

Although the District initially advised Warshawer that his records request "was under legal review," it failed to timely respond to his request, such that Warshawer's request was "deemed denied" under section 902(b)(2) of the RTKL, 65 P.S. § 69.902(b)(2).[2] (Docket entry no. 1 at ¶¶ 11-12). On January 29, 2013, Warshawer filed an appeal to the Office of Open Records (the "OOR") pursuant to Section 1101 of the RTKL, 65 P.S. § 67.1101. (*Id.* at ¶ 13). The sole argument raised by the District before the OOR was that the construction contract between Mar-Paul and the District obligated those parties to abide by the "binding discovery rules" set forth in the AAA Rules, which restrict the parties' discovery rights to those documents that the arbitrator directs any party to produce. (Docket entry no. 1, exhibit A at pp. 2, 4-5). On February 28, 2013, the OOR's assigned appeals officer, J. Chadwick Schnee, Esq., issued a final determination granting Warshawer's appeal based upon his conclusion "that a discovery agreement does not prohibit [Warshawer's] use of the RTKL in the present

---

2. Section 902(b)(2) of the RTKL states that if the governmental agency notifies the requestor "that the request for access is being reviewed," but does not respond to the request thirty days thereafter, "following the five business days allowed for in section 901, the request for access shall be deemed denied unless the requestor has agreed in writing to an extension to the date specified in the notice." 65 P.S. § 67.902(b)(2).

matter." (*Id.* at p. 5). The OOR appeals officer further directed the District "to provide all responsive records within thirty (30) days." (*Id.* at p. 6).

On April 1, 2013, the District filed the instant "Petition for Review" of the OOR's final determination pursuant to Section 1302 of the RTKL, 65 P.S. § 67.1302. In its petition, the District renews the only argument it asserted before the OOR, and alleges that its "deemed denial was appropriate because the Contract requires Mr. Warshawer, as the agent for Mar-Paul, to comply with the binding [arbitration] procedure for document requests." (Docket entry no. 1 at ¶ 15). In addition, the District now contends on appeal that Warshawer "seeks certain documents that are not in the possession of the District, but rather are in the possession of a party with whom the District has contracted to perform an ancillary function on behalf of the District." (*Id.* at ¶ 19). Based upon the "governmental function" test formulated in *SWB Yankees LLC v. Wintermantel*, 615 Pa. 640, 45 A.3d 1029 (2012), the District maintains that those records are not discoverable under Section 506(d) (1) of the RTKL, 65 P.S. § 67.506(d)(1), since they are not in the possession of third party contractors with whom the District "has contracted to perform a governmental function." (*Id.*).

In its supporting memoranda of law, the District expounds its two arguments and asserts that the "Exchange of Information" procedure set forth in the construction contract "is governed by the Federal Arbitration Act, and the Contract specifically references and incorporates the Federal Arbitration Act." (Docket entry no. 7 at p. 7). The District posits that the documents requested by Warshawer cannot be deemed "Public records" since the statutory presumption that a record in the possession of a local agency is "a public record" is inapplicable "if the record is exempt from disclosure under any other Federal

or State law or regulation or judicial order or decree." (*Id.*) (quoting 65 P.S. § 67.305(a)(3)). Based upon the proposition that the construction contract's reference to the Federal Arbitration Act is tantamount to the establishment of an exemption under "Federal law," the District avers that "[t]he OOR erred in determining that the requested records are 'public records' since the Right-to-Know Law exempts from disclosure records that are exempt under any other Federal or State law, as is the case here given the Federal Arbitration Act's validation of the Contract." (*Id.* at p. 8).

The District alternatively argues that the broad scope of Warshawer's twenty six requests includes records within the possession of Palumbo, Burkavage and the three subcontractors asserting "delay" claims, even though those third party contractors "were contracted to perform routine services ancillary to the District's core function to educate students." (*Id.* at p. 14). The District submits that the "architectural design, construction management, and tradesman services provided by the District's independent contractors for the Project do not constitute a governmental function." (*Id.* at pp. 11-12). Since those contractors allegedly did not perform a "governmental function," the District maintains that the records within the possession of those third parties are not subject to disclosure under *SWB Yankees.* (*Id.* at pp. 14-15).

Warshawer raises several arguments in opposition to the District's appeal. First, he notes that the construction contract, the AAA rules and the documents pertaining to the parties' payment dispute were attached to the District's petition and brief, but were not part of the OOR's certified record. Since Section 1303(b) of the RTKL states that the record on appeal "shall consist of the request, the agency's response, the appeal filed under Section 1101, the hearing transcript, if any, and the final written determination of

the appeals officer," 65 P.S. § 67.1303(b), Warshawer contends that "[t]his Court cannot consider materials that are not part of the certified record." (Docket entry no. 6 at p. 6) (citing *Parsons v. Pennsylvania Higher Education Assistance Agency ("PHEAA")*, 910 A.2d 177, 181 n. 3 (Pa. Cmwlth. 2006), *app. denied*, 591 Pa. 686, 917 A.2d 316 (2007)). Second, Warshawer asserts that based upon the District's failure to argue before the OOR that the Federal Arbitration Act is applicable, or that the requested records are in the possession of independent contractors who did not perform a "governmental function" under 65 P.S. § 67.506(d)(1), the District has waived those issues for purposes of judicial review under to 65 P.S. § 67.1302. (*Id.* at pp. 8-9, 12-15).

Third, Warshawer submits that the discovery limitations contained in the construction contract and the AAA Rules do not apply to his RTKL request since "Warshawer is not a party to the Contract and is not bound by its terms." (*Id.* at p. 9). He further avers that even if the AAA Rules are applicable, they merely govern "the discovery of documents *in an arbitration proceeding*, not a request under the RTKL which is not part of an arbitration proceeding." (*Id.* at p. 11) (emphasis in original). In that same vein, Warshawer contends that "[t]he Federal Arbitration Act clearly does not exempt any documents from disclosure, [and] in fact, is silent on the issue of the disclosure of documents." (*Id.* at p. 9).

With respect to the District's contention that any documents in the custody of third party contractors are not discoverable, Warshawer counters that the construction of school buildings is a "governmental function" of a school district, such that the requested materials are "public records" under Section 506(d)(1) of the RTKL, even if they are in the possession of Palumbo, Burkavage or the three subcontractors who have filed claims "for delay" with the

District. (*Id.* at pp. 16-19). Last, Warshawer asserts that he is entitled to an award of counsel fees under Section 1304 of the RTKL, 65 P.S. § 67.1304, since "the legal position asserted by [the District] before the OOR was not based on a reasonable interpretation of the law and the appeal to this Court is frivolous." (*Id.* at pp. 21-22).

At the time of oral argument on July 15, 2013, Warshawer acknowledged that the District has produced those records which were requested in his RTKL requests nos. 1, 2, 3, 5 and 14. (T.P. 7/15/13 at p. 58). Warshawer's requests nos. 4, 6-13, and 15-26 remain in dispute. Following the completion of oral argument, and the parties' subsequent submission of letter briefs on August 29, 2013, and September 3, 2013, the District's petition for review became ripe for disposition.

## II. DISCUSSION

## (A) STANDARD AND SCOPE OF REVIEW

Warshawer raises a threshold issue regarding our scope of review, and contends that the materials attached to the District's filings may not be considered since they are not part of the OOR's certified record under 65 P.S. § 67.1303(b). "Standard of review' and 'scope of review,' although district, are not concepts that are considered in isolation from one another." *Bowling v. Office of Open Records*, 2013 WL 4436219, at * 19 (Pa. 2013). "Scope of review" refers to the confines within which a reviewing court must conduct its examination, "or to the matters (or 'what') the [reviewing] court is permitted to examine." *Samuel-Bassett v. Kia Motors America, Inc.*, 613 Pa. 371, 407, 34 A.3d 1, 21 (2011), *cert. denied*, 133 S. Ct. 51 (U.S. 2012). "Standard of review" concerns the manner in which (or "how") that examination is to be conducted. *Holt v. 2011 Legislative Reapportionment Commission*, 614 Pa. 364, 392, 38 A.3d 711, 728 (2012); *In re City of Scranton*

*Request for Approval of Increase in Earned Income Tax on Non-Residents*, 2012 WL 6630597, at * 14 (Lacka. Co. 2012).

Section 1302(a) of the RTKL addresses the manner in which the common pleas court must consider a petition for review involving a "local agency,"[3] and states that the decision of the court "shall contain findings of fact and conclusions of law based upon the evidence as a whole" and "shall clearly and concisely explain the rationale for the decision." 65 P.S. § 67.1302(a). The Supreme Court of Pennsylvania recently clarified the appropriate standard of review under 65 P.S. § 67.1302, and concluded that the common pleas courts "are the ultimate finders of fact and that they are to conduct full de novo reviews of appeals from decisions made by the RTKL appeals officers, allowing for the adoption of the appeal officer's factual findings and legal conclusions when appropriate." *Bowling, supra*, at * 18.

As Warshawer has noted in his brief, Section 1303(b) states that the record on appeal before a common pleas court "shall consist of the request, the agency's response, the appeal filed under Section 1101, the hearing transcript, if any, and the final written determination of the appeals officer." 65 P.S. § 67.1303(b). However, Section 1303(b) does not restrict the scope of the record on appeal, and to the contrary, simply describes the record to be certified by the OOR to the reviewing court. Therefore, the "scope of review" is likewise broad or plenary, and permits trial courts "to expand the record" to fulfill their statutory

---

3. Section 102 of the RTKL defines a "local agency" as, *inter alia*, "[a]ny political subdivision, intermediate unit, charter school, cyber charter school or public trade or vocational school," 65 P.S. § 67.102, and a school district is deemed a "local agency" under the RTKL. *See Easton Area School District v. Baxter*, 35 A. 3d 1259 (Pa. Cmwlth. 2012). Section 302(a) of the RTKL states that "[a] local agency shall provide public records in accordance with this act." 65 P.S. § 67.302(a).

function as fact-finders and thereby consider matters beyond the record that is certified by the OOR. *Bowling, supra,* at * 20-21. Consequently, the "standard of review is *de novo* and [the] scope of review is broad or plenary when [a court] hears appeals from determinations made by appeals officers under the RTKL." *Id.* at * 21.

In support of his assertion that the documents which have been attached to the District's submissions may not be considered on appeal, Warshawer cites footnote 3 in *PHEAA* where the Commonwealth Court stated that "[m]aterials that are not part of the certified record are not before the Court and cannot be placed before the Court by attachment to a brief or reproduced record." *PHEAA,* 910 A.2d at 181 n. 3. However, *PHEAA* was based upon a prior version of the RTKL, *see* Act of June 21, 1957, P.L., *as amended,* 65 P.S. §§ 66.1-66.9, *repealed* by Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104, and predates the recent Supreme Court ruling in *Bowling.* Since *Bowling* confirmed that "courts must necessarily expand the record, when required, to fulfill their statutory functions," *Bowling, supra,* at * 20, the documents attached to the filings of the District and Warshawer will be considered to the extent that they are relevant to the issues raised by the parties.

(B) CONTRACTUAL LIMITATION ON DISCOVERY

The District first argues, as it did before the OOR, that the AAA Rules, which prescribe the discovery rights of Mar-Paul and the District in arbitration, bar Warshawer from securing the requested records via the RTKL. On appeal to this court, the District now contends that the single reference in section 13.1 of the construction contract, that "the Federal Arbitration Act shall govern Section 15.4" of AIA Document A232-2009 incorporating the AAA Rules, transforms the contractual discovery limitation into a "Federal law" exemption under Section

305(a)(3) of the RTKL.

Act 3 of February 14, 2008, made significant changes to the RTKL, resulting in "a dramatic expansion of the public's access to government documents." *Levy v. Senate of Pennsylvania*, 65 A.3d 361, 381 (Pa. 2013). Under the earlier version of the RTKL, "[t]he burden of establishing that requested material bears characteristics of a public record rest[ed] upon the party seeking access." *LaValle v. Office of General Counsel*, 564 Pa. 482, 497, 769 A.2d 449, 458 (2001). In contrast, "[u]nder the new law, agency records are presumed to be public records, accessible for inspection and copying by anyone requesting them, and must be made available to a requester unless they fall within specific, enumerated exceptions or are privileged." *Bowling, supra*, at * 3. "To justify a determination to deny a requester access to a requested record, the relevant government agency bears the 'burden of proving…by a preponderance of the evidence' that an exception applies." *Id.* Additionally, the current RTKL expands the definition of a "public record" so as to authorize access to the records of a third party contractor "with whom the agency has contracted to perform a governmental function on behalf of the agency," provided that the requested record "directly relates to the governmental function." *See* 65 P.S. § 67.506(d)(1). "These significant changes demonstrate a legislative purpose of expanded government transparency through public access to documents." *Levy, supra*; *Barnett v. Pennsylvania Department of Public Welfare*, 2013 WL 2599594, at * 3 (Pa. Cmwlth. 2013).

While acknowledging that the 2009 revisions to the RTKL are designed to afford greater public access and to increase government transparency, the District asserts that "it is important to note that the Right-to-Know Law request at the heart of this appeal was not filed by an interested citizen eager to obtain records of

official government information," but rather by "an upset contractor that is attempting to circumvent the clear language of a contract (the agreement to arbitrate) that it bad accepted when it bid the Project." (Docket entry no. 7 at p. 2). However, by virtue of Sections 302(b) and 703 of the RTKL, "a requester's motivation for making a request is not relevant, and his intended use for the information may not be grounds for denial." *Padgett v. Pennsylvania State Police*, 2013 WL 4009648, at * 3 (Pa. Cmwlth. 2013). Section 302(b) provides that "[a] local agency may not deny a requester access to a public record due to the intended use of the public record by the requester unless otherwise provided by law." 65 P.S. § 67.302(b). Section 703 similarly provides that "[a] written request need not include any explanation of the requester's reason for requesting or intended use of the records unless otherwise required by law." 65 P.S. § 67.703. Hence, "the motive or intent of the requester is not a valid reason for denying a request." *City of Allentown v. Brenan*, 52 A.3d 451, 455 n. 8 (Pa. Cmwlth. 2012), *app. denied*, 61 A.3d 189 (Pa. 2013).[4]

---

4. In *Chester Community Charter School v. Hardy*, 38 A.3d 1079 (Pa. Cmwlth. 2012), *app. granted and judgment vacated*, 2013 WL 4557177 (Pa. 2013), the charter school argued that the automatic stay of its defamation suit against the newspaper requester, based upon the federal bankruptcy filing by the requester, precluded the requester from proceeding with its RTKL appeal against the charter school. Relying upon Section 302(b) of the RTKL, the Commonwealth Court found that "[t]he trial court did not err in holding that the bankruptcy of *The Philadelphia Inquirer* did not bar this proceeding," and reasoned:

It may be that Requester is using the Right-to-Know Law to conduct discovery in the defamation action, which has been stayed. This result may seem unfair because Charter School is barred by the bankruptcy proceeding from doing similar discovery against the Defamation Defendants. Unfortunately, for the Charter School, it matters not. A requester's motive under the Right-to-Know Law has been made irrelevant by the legislature. [citation omitted]. Charter School is an "agency." As such, it is bound by the directives of the legislature for all agencies, and whether those directives are fair or wise is beyond the court's proper field of inquiry.

*Id.* at 1090. Since the Hardy court also relied upon *Signature Information*

The District nonetheless asserts that section R-24(d) of the AAA Rules contractually prohibits Warshawer, as Mar-Paul's agent, from obtaining the requested documents absent an order by the parties' designated arbitrator compelling the production of those documents. The parties have not cited any Pennsylvania authority addressing a conflict between a contractual restriction of a party's discovery rights and that party's public access rights contained in a right-to-know or freedom of information law, and our own research has only uncovered a single, unreported decision. In *E.B. v. Woodland Hills School District*, 2011 WL 705224 (W.D. Pa. 2011), the federal district court considered the enforceability of an agreement between a litigant and a school district to maintain "complete confidentiality" of their settlement. Finding that the parties' confidentiality agreement was trumped by the school district's RTKL obligations, the district court remarked:

> Neither party can dispute that "complete confidentiality" is listed as the first material term of the settlement on the handwritten sheet of paper. However, the school district, as a public entity, is subject to laws that require public disclosure of certain documents and records. The school district does not have the power or authority to consent to violate those statutes by private agreement. Nor can the school district enter a private agreement promising not to treat a particular record or document as subject to disclosure, if the document otherwise

*Solutions, LLC v. Aston Township*, 995 A.2d 510 (Pa. Cmwlth. 2010) in holding that the charter school waived other arguments which it had not specified in its original denial of the records request, and the Supreme Court of Pennsylvania subsequently abrogated *Signature Information Solutions* in *Levy, supra,* the Supreme Court vacated *Hardy* on August 28, 2013, and remanded it to the Commonwealth Court "for reconsideration in light of *Levy v. Senate of Pennsylvania,* 65 A. 3d 361 (Pa. 2013)." *Chester Community Charter School v. Hardy,* 2013 WL 4557177, at * 1 (Pa. 2013).

falls within the requirements of those laws.... As such, in this context, "complete confidentiality" must be interpreted to exclude disclosures required by Freedom of Information Acts, Right-to-Know Laws, or other such statutes.

*Id.* at * 1.

The Superior Court of Connecticut reached a comparable conclusion in *First Selectman, Town of Columbia v. Freedom of Information Commission,* 29 Conn. L. Rptr. 27, 2000 WL 1862558 (Conn. Super. 2000). In that case, a requester "made an oral request to the Town [of Columbia] for access to all project files and arbitration hearing transcripts pertaining to a construction dispute between the Town and J.S. Nasin Company in order to assess the likely tax impact on his community." *Id.* at * 1. The requested records "concerned a dispute between the Town and J.S. Nasin regarding a school construction project submitted to an American Arbitration Association panel ("AAA panel")." *Id.* After the Town of Columbia denied the request, the requester filed an administrative appeal with the state Freedom of Information Commission, and argued that the records were discoverable under Connecticut's Freedom of Information Act, C.G.S.A. § 1-200 et seq. *Id.*

Not unlike the Mid Valley School District in the case at hand, the Town of Columbia alleged that access to the school construction project records was barred by the American Arbitration Association rules. The Connecticut Freedom of Information Commission concluded that the Town of Columbia violated § 1-210(a) of the Connecticut Freedom of Information Act by failing to produce the requested records, and the town appealed that determination to the Superior Court of Connecticut. In dismissing the appeal, the Connecticut Court flatly rejected the town's argument premised upon the AAA Rules, and held:

The claim that the disclosure of the records is prohibited by the rules of the American Arbitration Association is also unavailing. The statutory requirements under [the Connecticut Freedom of Information Act] clearly supersede any non-binding private agreement that the Town may have with the AAA panel. By its express terms, General Statutes § 1-210(a) requires the disclosure of public records "[e]xcept as otherwise provided by any federal law or state statute." No exception is made for private agreements.

*Id.* at *3.

Section 708(b) of the Pennsylvania RTKL comprehensively itemizes those records which are exempt from access by a requester. *See* 65 P.S. § 67.708(b)(1)-(30). The statutory exemptions from disclosure must be narrowly construed due to the RTKL's remedial nature, *see Office of Governor v. Scolforo*, 65 A.3d 1095, 1100 (Pa. Cmwlth. 2013), and the District bears the burden of proving, by a preponderance of the evidence, that the records requested by Warshawer are exempt from public access. *See* 65 P.S. § 67.708(a)(1). No exemption is contained in 65 P.S. § 67.708(b) for records that are subject to contractual discovery limitations in binding arbitration. *See* First Selectman, supra (school construction project records presented to AAA panel were accessible since Connecticut Freedom on Information Act did not recognize an exemption for disclosure prohibitions set forth in private arbitration agreements). As a result, the document discovery restrictions set forth in the AAA Rules must yield to the RTKL's public disclosure requirements. *See Woodland Hills School District, supra.*

In an apparent effort to convert the parties' contractual discovery limitation to an exemption recognized by "Federal law," the District references the contractual provision which states that "the Federal Arbitration Act

shall govern" the AAA Rules pertaining to arbitration. *See* 65 P.S. § 67.305(a)(3) (stating that the presumption that a record of a local agency is "presumed to be a public record" does not apply if "the record is exempt from disclosure" under any federal law); 65 P.S. § 67.306 ("Nothing in this act shall supersede or modify the...nonpublic nature of a record or document established in Federal or State law, regulation or judicial order or decree."). Warshawer submits that the Federal Arbitration Act ("FAA") does not create such an exemption since "it is silent on the issue of the disclosure of documents." (Docket entry no. 6 at p. 9).

First enacted in 1925 and later codified as Title 9 of the United States Code in 1947, the FAA was adopted "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Equal Employment Opportunity Commission v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Section 2 of the Act states that an arbitration provision in a contract involving commerce "shall be valid, irrevocable, and enforceable," 9 U.S.C. § 2, and Section 3 empowers courts "on application of one of the parties" to stay the trial of a lawsuit "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3. If such a stay is issued upon application of one of the parties, "the stay pending arbitration extends to discovery, too" and prohibits discovery in the underlying litigation absent "a showing of 'extraordinary circumstances.'" *Harry F. Ortlip Company v. George Hyman Construction Company*, 126 F.R.D. 494, 497 (E.D. Pa. 1989); *Levin v. Rippel Twist Mills, Inc.*, 416 F. Supp. 876, 880 (E.D. Pa. 1976), *app. dismissed*, 549 F.2d 795 (3d Cir. 1977). The Federal Circuits are divided as to whether an arbitrator may compel pre-hearing document production from a third party, *compare In re Sec. Life Ins.*

*Co. of America*, 228 F. 3d 865, 870-871 (8th Cir. 2000) (recognizing arbitrator's power to compel pre-hearing document production by non-party) *with Life Receivables Trust v. Syndicate No. 102 at Lloyds of London*, 549 F.3d 210, 212 (2d Cir. 2008) (ruling to the contrary), and Third Circuit Court of Appeals has aligned itself with those Circuits which bar such discovery. *See Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F. 3d 404, 408-409 (3d Cir. 2004).

Although the FAA case law is not entirely "silent on the issue" of pre-arbitration discovery, the statute's stay provisions do not create a federal exemption precluding access to school building construction records of a school district simply because the construction contract incorporates the AAA Rules governing discovery. It bears noting, as a threshold matter, that the District and Mar-Paul are currently engaged in mediation, and that neither party has formally demanded arbitration pursuant to § 15.4 of AIA Document A232-2009, so as to trigger the AAA Rules and their limitations on discovery in arbitration.[5] (T.P. 7/15/13 at pp. 4-5). *Cf. Cox v. Ocean View Hotel Corp.*, 533 F. 3d 1114, 1122 (9th Cir. 2008) (employee failed to make proper demand for arbitration under agreement incorporating AAA Rules, such that employer's refusal to arbitrate was not a breach of arbitration agreement under FAA). Nor has the District sought a stay of any litigation initiated by Mar-Paul and simultaneously requested a concomitant stay of discovery pursuant to 9 U.S.C. § 3. *See Mintze v. American General Financial Services, Inc.*, 434 F. 3d 222, 229 (3d Cir. 2006) (on application of a party, "[a] court has the power to stay a proceeding

---

5. Under § 15.4.1 of AIA Document A232-2009, if the parties have selected arbitration as the method for binding dispute resolution, "[a] demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration." (Docket entry no. 7, exhibit B at p. 42).

if it determines that an issue falls under an applicable arbitration clause.").

More importantly, Warshawer is not a named party to the construction contract upon which the District has relied to invoke the AAA Rules and the FAA. (Docket entry no. 7, exhibit A at p. 1). The only individual designated as Mar-Paul's "representative" in Section 8.4 of the contract is Mr. Robert Bamford. (*Id.* at p. 10). Mr. Bamford also executed the contract on behalf of Mar-Paul in his capacity as President of that company. (*Id.* at p. 12). However, neither Mar-Paul nor Mr. Bamford presented the twenty six RTKL requests involved in this case.

But even if Warshawer somehow could be deemed a party to the construction contract which incorporated the AAA Rules, the outcome of this appeal would remain the same. To create an exemption from disclosure under Sections 305(a)(3) or 708(a)(1) of the RTKL, the federal or state statute or regulation at issue must state that the records sought are confidential or otherwise protected from discovery. *See, e.g., Sherry v. Radnor Township School District*, 20 A. 3d 515, 524-525 (Pa. Cmwlth. 2011) (honor code violation records maintained by school district were exempt from disclosure by Section 1232g of the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g, which expressly prohibits school districts from releasing such educational records), *app. denied*, 612 Pa. 710, 31 A. 3d 292 (2011); *Fort Cherry School District v. Coppola*, 37 A. 3d 1259, 1261 (Pa. Cmwlth. 2012) (school district employees' W-2 forms are exempt from disclosure under 65 P.S. § 67.305 since section 6103(a) of the Internal Revenue Code, 26 U.S.C. § 6103(a), specifically states that tax "[r]eturns and return information shall be confidential," and that no federal officer or employee "shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or

an employee.”); *Jones v. Office of Open Records*, 993 A.2d 339, 342 (Pa. Cmwlth. 2010) (inmate not entitled to written parole recommendations made by sentencing judge and prosecuting attorney since 37 Pa. Code § 61.2 states that records of Pennsylvania Board of Probation and Parole, including “evaluations” and “opinions…concerning a probationer or parolee are private, confidential and privileged.”). A local agency does not satisfy its burden of proving a statutory exemption under the RTKL by merely asserting that public access to records would frustrate the purpose of a particular statute. *See Housing Authority of City of Pittsburgh v. Van Osdol*, 40 A. 3d 209, 215 (Pa. Cmwlth. 2012) (holding that requester was entitled to names and addresses of owners of “all Section 8 properties” administered by housing authority under Section 8(a) of the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f(a), and rejecting argument that the requested materials were “exempt from disclosure… because disclosure of such information would necessarily identify the recipients and the type of social services they receive, which would not serve the purpose of the Section 8 program affording low-income families safe and sanitary housing in the neighborhood of their choice.”).

During the oral argument on July 15, 2013, the District conceded that the FAA “does not say that right-to-know requests are prohibited,” nor does it state “that certain records are not discoverable” if they are sought pursuant to a RTKL request. (T.P. 7/15/13 at pp. 6, 31). Absent an express statutory statement that specific records are confidential or otherwise shielded from public access, the FAA does not establish a federal exemption which makes the Mid Valley Elementary School construction records immune from discovery. While it is true that Mar-Paul’s counsel may utilize those records to prepare for arbitration or litigation against the District, Warshawer’s motive or intent in seeking their production “is not a valid reason

for denying a request." *Brenan*, 52 A. 3d at 455 n. 8. In short, the discovery restriction advocated by the District is nothing more than a private agreement to limit discovery as per the AAA Rules, and the public access directives of the RTKL supersede any such contractual proscription and entitle Warshawer to obtain the District's public records, *see Woodland Hills School District, supra*, even if such access results in pre-arbitration discovery. *See Hardy*, 38 A.3d at 1090.

## (C) RECORDS OF THIRD PARTY CONTRACTORS

The District also objects to Warshawer's RTKL requests on the ground that they seek documents in the custody of its third party contractors, Palumbo, Burkavage, Jerry Coyne Electrical Company, A. J. Demor & Sons, Inc., and Yannuzzi, Inc. Section 506(d)(1) of the RTKL provides that "[a] public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, and which directly relates to the governmental function and is not exempt under [the RTKL], shall be considered a public record of the agency for purposes of [the RTKL]." 65 P.S. § 67.506(d)(1). The District contends that the foregoing contractors did not "perform a governmental function" on behalf of the District, such that their records are not discoverable by Warshawer.

"Section 506(d)(1) makes records that directly relate to a governmental function performed on behalf of an agency by a contracted party public records of that agency." *Breslin v. Dickinson Township*, 68 A. 3d 49, 53 (Pa. Cmwlth. 2013). In its seminal decision in *SWB Yankees*, the Supreme Court of Pennsylvania concluded "that a reasonably broad construction of 'governmental function' best comports with the objective of the Right-to-Know Law, which is to empower citizens by affording

them access to information concerning the activities of their government." *SWB Yankees*, 45 A.3d at 1042. To constitute a "governmental function," the activity performed by the independent contractor must involve "the delegation of some non-ancillary undertaking of government," rather than a "routine service" agreement. *Id.* at 1042-1043. According to the Supreme Court, "where a government agency's primary activities are defined by statute as 'essential governmental functions,' and such entity delegates one of those main functions to a private entity via the conferral of agency status, Section 506(d)(1) pertains on its terms to non-exempted records directly relating to the function." *Id.* at 1044.

The primary functions of a school district are delineated in the Public School Code of 1949, 24 P.S. §§ 1-101 *et seq.* Section 701 of the Code imposes a statutory duty upon school districts to "provide the necessary grounds and suitable school buildings" for students to attend school. 24 P.S. § 7-701. *See also* 24 P.S. § 5-501 (requiring school districts to establish and maintain "a sufficient number of elementary public schools"). Those school buildings "shall be constructed, furnished, equipped, and maintained in a proper manner...." 24 P.S. § 7-701. In prior appellate litigation involving the Mid Valley School District, the Commonwealth Court expressly stated that "[t]he School District is vested with the statutory authority to establish suitable school facilities." *Mid Valley Taxpayers Association v. Mid Valley School District*, 52 Pa. Cmwlth 402, 409, 416 A.2d 590, 593 (1980). *Accord School Dist. of Philadelphia v. Planet Ins. Co.*, 44 Pa. D. & C. 3d 262, 271 (Phila. Co. 1987). Additionally, the District has a duty under the Public School Code to retain, "for a period of not less than six years," certain "financial records of the district" which include "bills, contracts, invoices, receipts and purchase orders." 24 P.S. § 5-518.

Consequently, the construction and maintenance of suitable school buildings are non-ancillary governmental functions of a school district, and to the extent that the District delegated that statutory responsibility to Palumbo, Burkavage or their subcontractors, any records that directly relate to the services that those independent contractors rendered in connection with the Mid Valley Elementary School project are discoverable under Section 506(d)(1). Section 4.2 of AIA Document A232-2009 distinctly states that the architect, Palumbo, and the construction manager, Burkavage, "will be the [District's] representatives during construction until the date that Architect issues the final Certificate for Payment." (Docket entry no. 7, exhibit B at p. 20). In that regard, Palumbo and Burkavage were contractually assigned the responsibility for determining if the elementary school construction work was performed "in accordance with Contract Documents," and to report to the District any "known deviations from the Contract Documents and the most recent Project schedule," as well as any "defects and deficiencies observed in the Work." (*Id.* at §§ 4.2.2, 4.2.3). Palumbo and Burkavage were also contractually obligated to "review and certify all Applications for Payment by the Contractor," and possessed the "authority to reject Work that d[id] not conform to the Contract Documents." (*Id.* at §§ 4.2.7-4.2.8). Furthermore, the construction contract specifically states that Palumbo and Burkavage "have authority to act on behalf of the [District]" to the extent provided in the contract documents. (*Id.* at § 4.2.1).

Under the contract, the subcontractors were delegated the responsibility "to perform a portion of the Work at the site," provided that the District did not object to the selection of the subcontractors after being advised in writing of their identity. (*Id.* at p. 22). Any contractor for the Mid Valley Elementary School project was barred from retaining a subcontractor if the District "made a

reasonable and timely objection" to that subcontractor. (*Id.* at § 5.2.2). If the subcontractor who was rejected by the District "was reasonably capable of performing the Work," the "Contract Sum and Contract Time" could be be increased "by the difference, if any, occasioned" by the selection of a substitute subcontractor. (*Id.* at § 5.2.3).

The subcontractors assumed "all the obligations and responsibilities, including responsibility for safety," which the general contractor owed to the District. (*Id.* at p. 23). Conversely, any subcontract agreement could be assigned by the contractor to the District, in which event the District "assume[d] the Contractor's rights and obligations under the subcontract." (*Id.* at § 5.4.1). If the District further assigned the subcontract to a successor contractor, the District "nevertheless remain[ed] legally responsible for all of the successor Contractor's obligations under the subcontract." (*Id.* at § 5.4.3).

Based upon the clear language of the Public School Code, the construction of suitable school buildings constitutes a non-ancillary function of a school district. Palumbo and Burkavage, as the project architect and construction manager, were delegated the authority to act on the District's behalf during the elementary school construction, including the responsibility (1) for determining if the work complied with the contractual requirements, (2) for discovering deficiencies in the construction work, (3) for reviewing and certifying the contractors' applications for payment, and (4) for rejecting any work that did not conform to the contract. The subcontractors, upon being tacitly accepted by the District as suitable agents, assumed "all obligations and responsibilities" of the contractors, such as Mar-Paul, to properly construct the elementary school. *See* 24 P.S. § 7-752 (requiring that contracts awarded for the construction of school buildings "contain a clause or

stipulation requiring that no person shall be employed to do work under such contract except competent and first-class workmen," and stating that "[n]o workmen shall be regarded as competent and first-class..., except those who are duly skilled in their respective branches of labor."). Thus, consistent with the "reasonably broad construction of 'governmental function'" mandated by *SWB Yankees*, the District contractually delegated one of its primary governmental functions to Palumbo, Burkavage and the contractors in conjunction with the elementary school construction.

Our inquiry does not end once it has been determined that the independent contractors in question "perform[ed] a governmental function." "In order for third-party records to be considered public records...under the RTKL, they must be in the possession of the contracting party and must 'directly relate to the governmental function.'" *Buehl v. Office of Open Records*, 6 A.3d 27, 30 (Pa. Cmwlth. 2010). The direct relationship must exist between the records sought and the *performance* of the governmental function. The Commonwealth Court recently provided the following guidance in that respect:

> The defined governmental function shapes the relationship analysis.... Assessing a direct relationship requires careful review of the contract at issue and the information related to performing the contractual obligations. The simple scenario presents when the contract requires the contractor to transmit the information sought to the agency, or necessitates the exchange of such information as part of performing the contract.

*Allegheny County Department of Administrative Services v. Parsons*, 61 A.3d 336, 344 (Pa. Cmwlth. 2013) (*en banc*), *app. denied*, No. 80 WAL 2013 (Pa. July 31, 2013). Under this analysis, the "records of a government contractor may

be subject to the RTKL only if the function is governmental in nature, and the precise information sought directly relates to performance of that governmental function." *Id.* at 346.

The RTKL requests which remain in dispute seek the following documents relating to the Mid Valley Elementary School construction project:

communications between the District, Palumbo and Burkavage "concerning any application for payment submitted by Mar-Paul"

communications between the Mid Valley School Board, the District and Palumbo's former employee, "Mr. Tim Keene relating to the Project"[6]

communications between the School Board, the District and Burkavage relative to the Project

daily logs maintained by Burkavage for the Project

Burkavage's daily or weekly records "relating to the manpower of Mar-Paul and other contractors on the Project"

written communications between the School Board, the District, Palumbo and Burkavage concerning the Project

written notices of claims by any contractors which were received by the District, as well as written communications between the School Board, the District, Palumbo and Burkavage regarding those claims

documents pertaining to the district's assertions that

---

6. Mr. Keene was Palumbo's representative for the elementary school project, and has since been hired as an employee by the District. (T.P. 7/15/13 at pp. 53, 66).

Mar-Paul's "work was in any way defective, deficient or untimely"

punch lists issued for Mar-Paul's work on the project

records indicating the date(s) on which the Project work "was certified by either" the District, Palumbo or Burkavage "as being 'substantially completed'"

written communications between the District and the Pennsylvania Department of Education concerning the Project

resolutions and records "relating to any submissions by the School District" to the Pennsylvania Department of Education under PlanCon Part I — Interim Reporting and PlanCon Part J — Accounting Based on Final Costs[7]

all written agreements between Burkavage and the District, including "any resolutions approved by the Board relating to such written agreements"

all written agreements between Palumbo and the District, together with any School Board resolutions concerning the same

all School Board resolutions "relating to the hiring or engagement of Tim Keene by the School District"

all project schedules prepared by Burkavage for the Project.

---

7. "PlanCon" refers to "the Planning and Construction ('PlanCon') procedures which the District must follow in order to receive reimbursement from the Pennsylvania Department of Education for various phases of…school construction." *Paris v. Scranton Board of Zoning Appeals*, 100 Lacka. Jur. 254, 261 (1999). "For each facet of the PlanCon process, the District prepares a formal submission for consideration by the District Board, and once the submission is approved by the District Board, it is forwarded to the Department of Education for its rejection or approval." *Id.*

(Docket entry no. 1, exhibit D at pp. 4-7).

With the possible exception of the daily logs maintained by Burkavage (request no. 8), Burkavage's daily or weekly records relating to the contractors' manpower (request no. 9), written communications between Palumbo and Burkavage (request nos. 11-12), written communications between Burkavage and other contractors (request no. 13), the punch lists issued for Mar-Paul's work (request no. 18) and all construction schedules prepared by Burkavage (request no. 26), the records sought by Warshawer were either submitted to or authored by the District. Since the materials requested by Warshawer in request nos. 4, 6, 7, 10, 15, 16, 17, 19, 20, 21, 22, 23 and 24 concern documents that were prepared by or transmitted to the District in connection with the elementary school construction, they are in the possession of the District itself and directly relate to the performance of its governmental function of providing suitable school buildings. *See Bagwell v. Pennsylvania Department of Education*, 2013 WL 3778927, at * 8 (Pa. Cmwlth. 2013) ("Private persons and entities may create correspondence and send it to an agency, thereby potentially making it a record of the agency."); *Parsons*, 61 A.3d at 344 (records directly relate to the performance of the governmental function "when the contract requires the contractor to transmit the information sought to the agency, or necessitates the exchange of such information as part of performing the contract.").

Records that were prepared or maintained by Palumbo or Burkavage pertaining to the daily logs, the contractors' manpower and Mar-Paul's punch lists (request nos. 8, 9, 18) not only concern the progress of the elementary school construction, and thereby directly relate to the performance of the foregoing governmental function, but arguably evince the disbursement of funds by the District for the Project. *See Sapp Roofing Company, Inc. v. Sheet*

*Metal Workers' International Association, Local Union No. 12*, 552 Pa. 105, 109, 713 A.2d 627, 629 (1998) (under earlier, more restrictive version of RTKL, private contractor's payroll records from school district project were deemed "public records because they are records evidencing a disbursement by the school district."); *Scranton Times v. Scranton Parking Authority*, 54 Pa. D. & C. 4th 90, 103 (Lacka. Co. 2001) (parking tickets that parking authority had voided for vehicles operated by District Attorney's Office employees were discoverable under the former RTKL since they related to disbursement of funds by a local agency). The records pertaining to communications between Palumbo or Burkavage and the project contractors (request nos. 11-13) also directly relate to the performance of the governmental function of constructing the elementary school. Request no. 25, which seeks any School Board resolution regarding the hiring of Mr. Tim Keene, does not directly relate to the elementary school construction. Nevertheless, it does concern the salary paid to an employee of an agency and the disbursement of District funds, and as such, constitutes a discoverable "financial record" of the District under Section 305 of the RTKL. *See, Pierce, Pennsylvania State University v. State Employees' Retirement Board: How the Right to Know Act Led to the Disclosure of Jo Pa's Salary*, 18 Widener L.J. 593 (2009).

Accordingly, the majority of the records sought by Warshawer are in the possession of the District and concern the construction of the elementary school, the services provided by the architect, construction manager and various contractors, and the ongoing disputes regarding delays in the completion of the project and the District's payment of the contractors. As such, they are subject to public access under the RTKL. *See Johnson v. Pennsylvania Convention Center Authority*, 49 A.3d 920, 926 (Pa. Cmwlth. 2012) ("The public has the right

to know who is performing services for the government agency, the scope of services, the disputes concerning the scope of services, the costs relating to those services, and the resolution of disputes concerning these services."). The remaining documents in the custody of independent contractors directly relate to the performance of the governmental function of furnishing suitable school buildings for elementary school students. *See Mid Valley Taxpayers Association, supra.* For the reasons set forth above, the materials requested by Warshawer in request nos. 4, 6-13 and 15-26 are discoverable, and the District's *de novo* appeal will therefore be denied.[8]

### (D) COUNSEL FEE REQUEST

Warshawer seeks to recover counsel fees and costs from the District under 65 P.S. § 67.1304. Section 1304 of RTKL governs the recovery of "[c]ourt costs and attorneys fees" in judicial appeals of OOR determinations, and provides:

(a) Reversal of agency determination. — If a court

---

8. Since the District's arguments have been rejected on their merits, it is unnecessary to consider Warshawer's contention that the District waived its challenges based upon the FAA and the "governmental function" test established in *SWB Yankees.* Prior to the Supreme Court ruling in *Levy,* the Commonwealth Court cautioned that "[a]ny grounds for denial or defenses not raised at the asserting party's first opportunity are waived." *Parsons,* 61 A.3d at 348 (citing *Signature Information Solutions, supra*). In *Levy,* the Supreme Court abrogated *Signature Information Solutions* and held that an agency does not waive "any reasons for non-disclosure not raised in its initial Section 903 written response." *Levy,* 65 A. 3d at 383. More recently, an *en banc* panel of the Commonwealth Court concluded "that a deemed denial of a RTKL request, as provided for in Section 901 of the RTKL, does not result in a deemed waiver of an agency's right to raise the exceptions set forth in Section 708(b) of the RTKL, 65 P.S. § 67.708(b), as defenses on appeal to the OOR." *McClintock v. Coatesville Area School District,* 2013 WL 4033842, at * 4 (Pa. Cmwlth. 2013). No reported decision has yet to consider whether a local agency is prohibited from asserting an exemption or other argument before a common pleas court which the agency failed to raise before the OOR.

reverses the final determination of the appeals officer or grants access to a record after a request for access was deemed denied, the court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to a requester if the court finds either of the following:

(1) the agency receiving the original request willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise acted in bad faith under the provisions of this act; or

(2) the exemptions, exclusions or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.

(b) Sanctions for frivolous requests or appeals. — The court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to an agency or the requester if the court finds that the legal challenge under this chapter was frivolous.

(c) Other sanctions. — Nothing in this act shall prohibit a court from imposing penalties and costs in accordance with applicable rules of court.

65 P.S. § 67.1304.

Section 1304(a) provides two bases for a requester to recover counsel fees and costs. First, the successful requester may recover such fees and costs if the agency denied access to a public record willfully or with wanton disregard, or otherwise acted in bad faith in responding to a RTKL request. *See* 65 P.S. § 67.1304(a)(1). Alternatively, a requester may be awarded counsel fees and costs if the exemption, exclusion or defense asserted by the agency was not based upon a reasonable interpretation of the law. *See* 65 P.S. § 67.1304(a)(2). In contrast, a prevailing agency may only recover counsel fees and costs under the singular

ground set forth in Section 1304(b). Under subsection (b), the prevailing agency, as well as a successful requester, may recover counsel fees and costs if the legal challenge advanced by the unsuccessful litigant was "frivolous." 65 P.S. § 67.1304(b). Thus, Section 1304 provides three grounds for the recovery of counsel fees and costs by a prevailing requester, but only one basis for such an award to an agency which succeeds on appeal.

To receive an award of counsel fees and costs under Section 1304(a), the requester must either establish willful, wanton or bad faith conduct by the agency, or, at a minimum, a legal argument on appeal that was the product of an unreasonable interpretation of the governing law. *See Barkeyville Borough v. Sterns*, 35 A.3d 91, 98 (Pa. Cmwlth. 2012) (holding that trial court committed reversible error in awarding attorney fees, and finding "[t]here is no evidence in the record that the Borough acted in bad faith or that it unreasonably interpreted the law."). Counsel fees and costs are recoverable under either of those grounds only if (1) the court reverses the OOR final determination, or (2) the court grants access to records following a deemed denial by the agency. *See* 65 P.S. § 67.1304(a). The criterion for a counsel fee award set forth in Section 1304(a)(2), i.e., lack of "a reasonable interpretation of law," appears to be less demanding than the willful, wanton and bad faith standard contained in Section 1304(a)(1). *See, e.g., Weiley v. Albert Einstein Medical Center*, 51 A.3d 202, 211 (Pa. Super. 2012) ("Wanton misconduct means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow."); *In re Estate of Warden*, 2 A.3d 565, 574 (Pa. Super. 2010) ("The Pennsylvania Supreme Court has defined bad faith conduct as being motivated by 'fraud, dishonesty or corruption.'"), *app. denied*, 610 Pa. 580, 17 A. 3d 1255 (2011).

The recovery of counsel fees and costs under section 1304(b) applies more broadly to any frivolous "legal challenge" by a party, and unlike Section 1304(a), is not confined to agency conduct in connection with an unsuccessful deemed denial or a reversal of the OOR final determination. An RTKL challenge "is frivolous under Section 1304(b) if it is arbitrary, vexatious or the result of bad faith." *Pennsylvania State Troopers Association v. Scolforo*, 18 A. 3d 435, 442 (Pa. Cmwlth. 2011). Reported decisions affirming an award of counsel fees and costs under Section 1304 are apparently non-existent, and two commentators have observed:

> As of this writing, the authors are unaware of any unappealed judicial award of attorney fees or civil penalties based on the finding that either an agency acted in bad faith or based its reasons for denying access to records on an unreasonable "interpretation of the law," although the Commonwealth Court has reversed a Court of Common Pleas of Venango County decision awarding attorney fees based on a lack of evidence "that the Borough acted in bad faith or that it unreasonably interpreted the law." Similarly, while the RTKL provides that both requesters and agencies may be subject to attorney fees and costs of litigation for pursing frivolous appeals, no court has yet made such a finding.

Byerly & Schnee, *What Every Lawyer Needs to Know About the Right-To-Know Law*, 83 Pa. B.A.Q. 116, 129 (July 2012) (footnotes omitted). *See also, Office of Lieutenant Governor v. Mohn*, 67 A.3d 123, 134 n. 14 (Pa. Cmwlth. 2013) (denying request for counsel fees by requester who claimed that agency lacked "a reasonable basis in the law" to assert a statutory exemption from disclosure); *Office of Governor v. Raffle*, 65 A.3d 1105, 1111 n. 6 (Pa. Cmwlth. 2013) (rejecting counsel fee request, and holding that

"[g]iven the fact that the [agency] had recently dismissed similar requests as disruptive, it had a reasonable basis for warning Requester about the RTKL's disruptive requester provisions, and did not display any bias against Requester in doing so.").

Warshawer contends that he is entitled to an award of counsel fees and court costs since the District's "claim that the Contract barred Mr. Warshawer from making the [RTKL] request is a frivolous legal position," and its "argument that the architect and construction manager do not perform a governmental function relative to the Project is contrary to Pennsylvania case law." (Docket entry no. 6 at p. 22). As noted above, the District's contractual discovery limitation argument raised an issue of first impression which has not been squarely addressed by an appellate court in Pennsylvania. Moreover, no decisional precedent has previously held that school building construction constitutes a "governmental function" of a school district under Section 506(d)(1) of the RTKL. Therefore, the District did not act willfully, wantonly or in bad faith in denying Warshawer's RTKL requests, nor did it advance a frivolous legal challenge or assert an exemption based upon an unreasonable interpretation of the law. As a result, Warshawer's request for counsel fees and costs under 65 P.S. § 1304 will be denied.

## ORDER

And now, this 17th day of September, 2013, upon consideration of the "Petition for Review" filed by petitioner, Mid Valley School District, the exhibits and memoranda of law submitted by the parties, and the oral argument of counsel, and based upon the findings of fact and conclusions of law set forth in the foregoing memorandum in accordance with 65 P.S. § 67.1302(a), it is hereby ordered and decreed that:

1. The "Petition for Review" of the final determination of the Office of Open Records dated February 28, 2013, is denied and dismissed;

2. Within the next thirty (30) days, the Mid Valley School District shall provide respondent, Sam L. Warshawer, Jr., Esquire, with all records requested in his "Right to Know Requests" nos. 4, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25 and 26. The parties have stipulated that the Mid Valley School District has already provided Mr. Warshawer with those records which are responsive to his request nos. 1, 2, 3, 5 and 14; and

3. Respondent's request for an award of counsel fees and expenses pursuant to 65 P.S. § 67.1304 is denied.